**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PAMELA R. GLOVER,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:10-cv-1619-Orl-28KRS**

**GENTIVA HEALTH SERVICES, INC.,**

        **Defendant.**
_____/

## ORDER

In this contract dispute, Plaintiff alleges that Defendant, Gentiva Health Services, Inc. ("Gentiva"),[1] breached a settlement agreement that was entered into by both parties in order to resolve a previous employment-related case. Defendant has moved for summary judgment.[2] (Doc. 41). As discussed below, Defendant's motion shall be granted.

**I. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving

---

[1] Originally, Senior Home Care, Inc. was included as a Defendant, (see Am. Compl., Doc. 2), but the claim against it was voluntarily dismissed by Plaintiff, (see Doc. 18).

[2] This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. 41) and Plaintiff's Response in opposition thereto (Doc. 47). The Court also considered the Joint Final Pretrial Statement (Doc. 52).

party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1263 (quoting Anderson, 477 U.S. at 251-52).

## II. Background

Gentiva is in the home health care business, and Plaintiff is a former employee of Gentiva. (Joint Final Pretrial Statement ("JFPS"), Doc. 52, at 6). In 2004, Plaintiff was fired by and subsequently filed suit against Gentiva, alleging violations of the Florida Whistleblower Act, section 448.101, et seq., Florida Statutes. (Id.). As a result, Plaintiff and

Gentiva entered into a confidential settlement agreement. (Id.). In response to Plaintiff's concerns that Gentiva would provide negative references regarding Plaintiff to potential future employers, the agreement provided that a third party, TALX Corporation ("TALX")–rather than Gentiva–would provide verification of Plaintiff's employment with Gentiva. (Id.) The provision of the agreement addressing this ("the TALX provision") reads as follows:

> In the event that [Plaintiff] uses Gentiva as a reference, [Plaintiff] should direct the potential employer or any person to contact Gentiva through the Work Number for Everyone Service of TALX Corporation at 1-900-555-9675 which requires the caller to input the Gentiva Company Code of 10439 and [Plaintiff's] social security number. Upon input of the required information, the TALX Corporation will then verify [Plaintiff's] former employment with Gentiva stating her job title, status, dates of employment and income but not the basis for [Plaintiff's] separation from employment.

(Ex. 1 to Glover Dep., Doc. 45-1, ¶ 10). Due to the confidentiality clause in the settlement agreement, the parties have not submitted the entire agreement, but they have indicated that the TALX provision is the only provision relevant to Defendant's duties regarding the TALX phone number. (Def's Mot. for Summ. J., Doc. 41, at 7; Pl.'s Resp., Doc. 47, at 7-8; see also Glover Dep. at 33).

After Plaintiff left Gentiva's employ, she applied for a position with Senior Home Care, Inc. ("Senior") and interviewed with Lorraine Villa, (Villa Dep., Doc. 44-1, at 19), the Area Director of Sales for Senior, (id. at 7). After the interview, Plaintiff was offered a job with Senior contingent on background and reference checks, as was Senior's policy. (Id. at 12, 26). Villa did not rely on the references provided by Plaintiff, (see id. at 60; Villa/Glover email chain, Ex. 6 to Glover Dep.), but instead spoke with two of Senior's employees who worked

in the same geographical area as Plaintiff and either knew her or knew of her reputation within the home health care community, (Villa Dep. at 45, 60, 64). Both of those employees provided negative references regarding Plaintiff and strongly suggested that Villa not hire her. (Id. at 50-52; Cook Dep., Doc. 48, at 28). Meanwhile, Villa's boss, William Cook, contacted Barbara Moyer, who was an acquaintance of his at Gentiva. (Cook Dep. at 17-18). During the course of their conversation, Cook mentioned that he was considering hiring Plaintiff and asked for a reference from Moyer, (id. at 18), but pursuant to Gentiva's policy, Moyer did not provide any information regarding Plaintiff, (id.; Moyer Dep., Doc. 50, at 42-43).[3]

Subsequent to these conversations, and based solely on the negative references provided to Villa from Senior employees, (Villa Dep. at 37, 60; Cook Dep. at 27-29), it was determined that Villa should rescind the offer of employment she had given Plaintiff, (Villa Dep. at 56-57).[4] Accordingly, Villa sent Plaintiff an email explaining that Plaintiff's references

---

[3] According to Moyer, Cook never actually asked her for a reference; he mentioned that he was considering hiring Plaintiff in the course of their conversation but did not give Moyer the opportunity to comment. (Moyer Dep. at 42-43). Cook stated that he asked Moyer for a reference and she told him that she could not provide one. (Cook Dep. at 18). In either case, both Cook and Moyer agree that Moyer did not disclose any information about Plaintiff to Cook.

[4] Plaintiff asserts that Villa's statement that Senior's sole reason for not hiring Plaintiff was the negative references from other Senior employees is not conclusive because there is a question of fact as to whether Villa had the authority to hire Plaintiff. The evidence, however, indicates that Villa did have the authority to hire Plaintiff, although she only made hiring decisions after discussing those decisions with her supervisor, Cook. (See Cook Dep. at 25-26 (stating that Villa would have made the decision whether or not to hire Plaintiff and would not have had to get Cook's approval); Villa Dep. at 8 (stating that Villa had hiring capacity) & 11 (stating that Villa would discuss her hiring decisions with her supervisor, Cook)).

"did not check out" and therefore Villa was rescinding the offer. (Villa/Glover email chain, Ex. 6 to Glover Dep.). Plaintiff responded by asking Villa which references provided negative responses, and Villa explained that she could not reveal the names of the individuals but assured Plaintiff the references were not any of those listed by Plaintiff. (Id.). Villa further explained that they were "mutual professional contacts in the home health care arena." (Id.).

### III. Analysis

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish [by a preponderance of the evidence]: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009); Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1977). Neither party disputes the existence of a valid contract–the settlement agreement. Rather, the dispute is over whether Gentiva breached that agreement and whether such a breach caused damage to Plaintiff.

Plaintiff asserts that Gentiva breached the settlement agreement in two ways. First, she contends that Gentiva breached its duty with regard to the TALX phone number by not maintaining the same number or not giving Plaintiff notice that the number had changed. Second, Plaintiff claims that Gentiva breached the confidentiality provision of the settlement agreement when Moyer spoke to Cook about Plaintiff. Gentiva, however, argues that Plaintiff has failed to show that Gentiva breached the settlement agreement in any way and that even if it did, Plaintiff has failed to show that she suffered any damages as a result of such a breach.

### A. The TALX Phone Number

Plaintiff alleges that Gentiva breached the settlement agreement by failing to maintain TALX's phone number or failing to notify Plaintiff that the number had changed. Gentiva argues that neither of these actions constitutes a breach of the settlement agreement because the agreement did not impose such duties on Gentiva.

Plaintiff admits that on its face, the settlement agreement does not impose a duty on Gentiva to maintain the TALX phone number or to notify Plaintiff if the number were to change. Nevertheless, Plaintiff argues that such a duty should be inferred from the context of the TALX provision. Plaintiff's argument is not well-taken.

"Where a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted." Jacobs v. Petrino, 351 So. 2d 1036, 1039 (Fla. 4th DCA 1976) (quotation omitted). Indeed, "if a party desires [an important] provision . . . , such a provision must be expressly provided for in the contract." S. Crane Rentals, Inc. v. City of Gainesville, 429 So. 2d 771, 773-74 (Fla. 1st DCA 1983). The TALX provision clearly does not expressly provide that Gentiva has a duty to maintain the TALX number or to inform Plaintiff if the number changed. In fact, the TALX provision does not expressly impose any duties on Gentiva. It is reasonably inferred from the language of the TALX provision that Gentiva will provide TALX with the correct information regarding Plaintiff and do what is necessary for TALX to provide that

information–e.g., pay TALX for its services.⁵  No duty to maintain the TALX line or to keep Plaintiff informed of any changes in the TALX number, however, is reasonably inferred.⁶

Accordingly, the settlement agreement does not create a duty for Gentiva to maintain the TALX number or to notify Plaintiff of changes to the TALX number.  Gentiva, therefore, did not breach the settlement agreement by failing to do so.  Moreover, even if Gentiva's failure to maintain the TALX number or to notify Plaintiff of changes to it did constitute a breach of the settlement agreement, Plaintiff has failed to show that such a breach caused any damages.

Plaintiff alleges that Gentiva's breach caused Senior to rescind her job offer and caused at least twelve other potential employers to not offer her a position.  (JFPS at 2; Glover Dep. at 108).  Plaintiff, however, has not presented evidence that anyone from Senior or any other potential employer actually called the discontinued TALX number, much less evidence that such a call caused the employer to not hire Plaintiff.  In fact, the only evidence

---

⁵ Plaintiff also appears to argue that Gentiva breached the contract failing to provide TALX with the correct information, alleging that Gentiva did not have a system in place to provide such information to TALX.  However, Plaintiff has not provided any evidence regarding the information TALX received from Gentiva about her employment, and as discussed in the text, even if TALX had incorrect information, Plaintiff has not presented any evidence that any potential employer actually contacted TALX.

⁶ Plaintiff also argues that the TALX provision contains a latent ambiguity.  "'A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.'"  McClune v. McClune, 79 So. 3d 194, 197 (Fla. 5th DCA 2012) (quoting Kirsch v. Kirsch, 933 So. 2d 623, 626 (Fla. 4th DCA 2006)).  Plaintiff argues that such an ambiguity exists because the agreement does not explain what should happen if TALX changes its phone number.  Although the Court finds the TALX provision to be clear and unambiguous, even if it contained a latent ambiguity Plaintiff's claim would fail because–as discussed in the text–she has failed to present any evidence of causation.

in regard to Senior indicates that the decision to rescind Plaintiff's offer was based solely on the negative references given by two of Senior's employees. (Villa Dep. at 37, 60; Cook Dep. at 27-29). Plaintiff has presented no evidence to rebut this explanation, thus, Plaintiff has failed to demonstrate the existence of a factual issue regarding whether any of her alleged damages were caused by the change in the TALX phone number or Gentiva's failure to notify her of the change.

### B. Confidentiality Provision

Plaintiff additionally argues that Gentiva breached the settlement agreement when Moyer, a Gentiva employee, disclosed information about Plaintiff to a potential employer–Cook. As discussed previously, however, there is no evidence that Moyer ever disclosed any information about Plaintiff to Cook. At most, Moyer informed Cook that she could not give him a reference for Plaintiff. (Cook Dep. at 18). Plaintiff has presented no evidence that Moyer, or anyone else at Gentiva, provided any potential employer information about Plaintiff's employment with Gentiva. Accordingly, there is no support for Plaintiff's contention that Gentiva breached the confidentiality provision of the settlement agreement.

Furthermore, Plaintiff has failed to present any evidence that any information allegedly disclosed by Gentiva caused Plaintiff damage. Plaintiff asserts that Moyer must have disclosed information to Cook and that this information must have caused Senior to rescind its offer because within the same week that Cook spoke to Moyer the job offer from Senior was rescinded. Plaintiff's mere speculation, however, is insufficient to raise an issue as to causation, particularly in the face of unrebutted evidence of Villa's received receipt of negative references from Senior employees during that same time period. (Villa Dep. at 43-

44, 56; Villa/Glover email chain, Ex. 6 to Glover Dep.).

Plaintiff also asserts that Moyer's refusal to provide a reference for Plaintiff could have been interpreted as a negative reference by Cook. First of all, Plaintiff is attempting to have it both ways; she is asserting that no matter how Gentiva responded to a request for information about Plaintiff–by giving information or refusing to give information–Gentiva would be in breach of the settlement agreement. Such an interpretation is not plausible. Moreover, the record evidence contradicts Plaintiff's argument. Cook stated that after Moyer refused to provide a recommendation regarding Plaintiff, he recalled that Gentiva had a policy of not giving recommendations for any former employees and therefore did not make any inferences from the fact that Moyer would not provide any information regarding Plaintiff. (Cook Dep. at 18). Additionally, the uncontroverted evidence shows that Senior's decision to rescind Plaintiff's offer was not based on any information provided by Moyer, (Villa Dep. at 37), but instead was based solely on the negative recommendations received from other Senior employees, (Villa Dep. at 37, 60; Cook Dep. at 27-29). Thus, Plaintiff has failed to present evidence that any alleged breach of the confidentiality provision by Gentiva caused her any damages.

## IV. Conclusion

In accordance with the foregoing, Gentiva's Motion for Summary Judgment (Doc. 41) is **GRANTED**. The Clerk shall enter judgment in favor of Gentiva Health Services, Inc. and close this case thereafter.

**DONE** and **ORDERED** in Orlando, Florida this 20th day of April, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party